IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO: 5:24-CV-00655

| | | |
|---|---|---|
| C.K. by and through his parents, T.K. and A.W. Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | |
| WAKE COUNTY BOARD OF EDUCATION: DR. ROBERT P. TAYLOR, Superintendent of Wake County Public School System, in his individual capacity, DR. ANTHONY "A.J." MUTTILLO, Assistant Superintendent for Human Resources, STACEY ALSTON, Principal of East Wake High School    in his individual capacity, KENDRA HILL, Senior Director of for Human Resources - Employee Relations, LANCE CANTERBURY, Senior Security Administrator, in his individual capacity, and JAMES RENCHER III, former teacher at East Wake High School, in his individual capacity Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | COMPLAINT |

NOW COMES Plaintiffs, C.K., by and through his parents, T.K. and A.W, and for their

complaint against Defendants Wake County Board of Education, Dr. Robert P. Taylor, Dr.

Anthony "A.J." Muttillo, Stacey Alston, Katonia Ford, Lance Canterbury, and James Rencher III,

allege and say as follows:

<u>SUMMARY</u>

Plaintiff, C.K. is a student with Autism Spectrum Disorder ("ASD").  C.K.'s ASD impacts

his functional communication and C.K. is nonverbal.  In the fall of 2022, C.K. came home several

1

days with bruises on his body. His parents thought this was due to C.K.'s self-injurious behaviors. In November 2022, C.K.'s parents received an anonymous letter in the mail alleging that C.K.'s teacher, James Rencher III, was verbally and physically abusive to C.K., and that he made sexually inappropriate comments in C.K.'s presence. T.K. immediately drove to the school and demanded to speak with Principal Stacey Alston. Principal Alston was offsite. T.K. waited until Principal Alston and Kendra Hill, the Senior Director for Human Resources – Employee Relations, arrived at the school. The District Senior Security Administrator, Lance Canterbury, was also present. Mr. Alston and Ford assured T.K. that the letter was sent by a disgruntled employee and that he had nothing to worry about. Mr. Canterbury insisted that he would know if something like this had occurred, that he had investigated, and agreed that the letter was sent by someone that was upset with Mr. Rencher. T.K.'s concerns were assuaged, and he took no further action.

In April of 2024, T.K. learned, that another student, J.H. also experienced abuse by Mr. Rencher, when J.H.'s parent reached out to T.K.'s employer, WRAL, to report receipt of the same anonymous letter. Similar to C.K.'s case, the Defendant District, Principal Alston and Assistant Principal Ford failed to take any action against Mr. Rencher.

Together, T.K. and J.H.'s mother appeared on a WRAL investigative report about the letters, the abuse their disabled children suffered, and the District's failure to investigate or act on their concerns. Ultimately, the Wake County Wake County District Attorney's Office investigated their claims. Mr. Rencher was charged with twelve counts of assault on an individual with a disability, including C.K. His case is currently pending.

C.K.'s parents were heartbroken when they received confirmation from the district about the abuse C.K. suffered while in Mr. Rencher's care. This heartbreak turned to outrage when the parents learned that at least one adult who witnessed the abuse reported it to administrators at East

Wake High School and/or the Defendant District. This outrage turned into fury when the parents learned that Mr. Rencher was substituting with Durham Public Schools after his arrest until WRAL, once again, reported the same. Then, and only then, was Mr. Rencher's employment with DPS terminated.

As set forth herein, Defendants' actions, or inactions, constituted discrimination on the basis of disability in an education program receiving federal funds in violation of Section 504 of the Rehabilitation Act of 1972, § 504(a), 29 U.S.C. § 794(a) and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et. seq.; 28 C.F.R. 35. Plaintiffs were injured and are entitled to recover damages caused by the Defendants negligence, negligent infliction of emotional abuse, civil assault and battery in accordance with North Carolina State Law.

PARTIES

1. Plaintiff C.K. is an eighteen-year-old disabled person. Plaintiff is an eleventh-grade student at East Wake High School ("EWHS"). At all times relevant to this action, Plaintiff C.K. attended EWHS.

2. Plaintiff T.K. is Plaintiff C.K.'s father and A.W is C.K.'s mother.

3. Plaintiffs currently reside in, and at all relevant times hereto were resident of Wake County, North Carolina.

4. Defendant Wake County Board of Education ("Defendant Board") is, and at all times relevant to this action was, a body politic and local board of education, as that term is defined in North Carolina General Statute Chapter 115C, with the responsibility of providing school children, including C.K. full and equal access to the public educational programs and activities offered in Iredell County in accordance with state law and the North Carolina Constitution. As a local

governmental unit, Defendant Board is a "person" as defined by 42 U.S.C. § 1983 (2000). Defendant Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

5. Defendant Dr. Robert P. Taylor ("Superintendent Taylor" or "Dr. Taylor") is, and at all times relevant to this action was, the superintendent of the Wake County Public School System ("WCPSS"). As Superintendent, Dr. Taylor owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. The Superintendent is charged with providing training to WCPSS staff on and ensuring compliance with federal and state laws. Under WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Dr. Taylor had a duty to report known or suspected abusive treatment of WCPSS students and any WCPSS teacher who commits such abusive treatment to the appropriate authorities and to protect students from such abusive treatment by WCPSS staff. Dr. Taylor is being sued in his individual capacity.

6. Defendant Dr. Anthony "A.J." Muttillo ("Associate Superintendent Muttillo" or "Dr. Muttillo") is the Associate Superintendent for Human Resources of the WCPSS. Under WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Associate Superintendent Muttillo had a duty to report any known or suspected abusive treatment of WCPSS students, any WCPSS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from such abusive treatment by WCPSS staff. Associate Superintendent Muttillo was aware of the reports that James Rencher's abusive treatment of students and failed to act. Dr Muttillo is being sued in his individual capacity.

7. Defendant Stacey Alston ("Principal Alston" or "Mr. Alston") is the Principal of EWHS. As Principal, Mr. Alston was responsible for ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Alston was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Principal Alston had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Defendant Alston was aware of the reports that James Rencher's abusive treatment of students and failed to act. He is being sued in his individual capacity.

8. Defendant Kendra Hill ("Defendant Hill" or "Ms. Hill") is, upon information and belief, was the Senior Director for Human Resources – Employee Relations at WCPSS. Upon information and belief, Defendant Hill was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Ms. Hill had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Ms. Ford was aware of the reports that James Rencher's abusive treatment of students and failed to act. She is being sued in her individual capacity.

9. Defendant Lance Canterbury ("Defendant Canterbury" or Mr. Canterbury") is, upon information and belief, is a Senior Administrator at Wake County Public School System's Office of Security. Under WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Mr. Canterbury had a duty to report known or suspected abusive treatment of WCPSS students and any WCPSS teacher who commits such abusive treatment to the appropriate authorities and to protect students from such abusive treatment by WCPSS staff. Mr. Canterbury was aware of the reports that James Rencher's abusive treatment of students and failed to act. Mr. Canterbury is being sued in his individual capacity

10. James Rencher III was, at all times relevant to this action, a teacher within WCPSS where the physically, verbally and emotionally abusive treatment of C.K. giving rise to this action occurred. On multiple occasions, Mr. Rencher improperly engaged in physically, verbally, and emotionally abusive treatment of C.K. and other disabled students. He is being sued in his individual capacity.

<u>JURISDICTION AND VENUE</u>

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

12. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a), which gives district courts original jurisdiction over "any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights

of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights." 28 U.S.C. § 1343(a).

13. Plaintiffs bring this action to redress disability discrimination in accordance with the provisions of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a), and Title II of Americans with Disabilities Act ("ADA") of 1990, § 202, 42 U.S.C. §§ 12101 *et seq*.; as more fully set forth herein.

14. This Court has supplemental jurisdiction over North Carolina state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants are located within the Eastern District of North Carolina and a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

<u>WAIVER OF GOVERNMENTAL IMMUNITY</u>

16. Local Boards are separate corporate bodies that can sue and be sued. *See* N.C. Gen. Stat. § 115C-40, 42.

17. A school board waives its governmental immunity when it procures excess liability insurance coverage through the [North Carolina School Boards Trust] from a licensed commercial insurance carrier. *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439 at *10 (E.D.N.C. Sept. 24, 2012) (*quoting Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ*., 183 N.C. App. 554, 561 (2007)).

7

18. Upon information and belief, Defendant Board has purchased, or caused the North Carolina School Board Trust to purchase, commercial liability insurance for the 2022-2023, 2023-2024, and 2024-2025 fiscal years, and, thus, has waived its governmental immunity.[1]

19. Although the State has not waived sovereign immunity for these individual State employees in the event that there is no commercial liability insurance, the State is responsible for the defense of State employees and for payment up to one million dollars ($1,000,000.00) of any judgment awarded in a court of competent jurisdiction against a State employee minus the first one hundred fifty thousand dollars ($150,000.00) which is paid by the State Board of Education. *See* N.C. Gen. Stat. § 143-300.6

<u>INDIVIDUAL DEFENDANTS DO NOT HAVE IMMUNITY</u>

20. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Defendants were required to report Defendant Rencher's abusive treatment of C.K. and his other students to law enforcement and the State Board of Education.

21. WCPSS Policy 4040, which mirrors 16 NCAC 06C .0312, includes the additional reporting states

    3. Report of Criminal Misconduct

---

[1] Wake County Public School System Adopted Budget, Fiscal Year July 1, 2022 – June 20, 2023, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2022-23%20Adopted%20Budget.pdf (p.61) (last visited October 14, 2024).

Wake County Public School System Adopted Budget, Fiscal Year July 1, 2023 – June 20, 2024, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2023-24%20Adopted%20Budget.pdf (p.62) (last visited October 14, 2024)

Wake County Public School System Board of Education's Proposed Budget, Fiscal Year July 1, 2024 – June 20, 2025, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2024-25%20Board%20of%20Education%20Proposed%20Budget%20Internet%20V2.pdf (p.58)(last visited October 14, 2024)

Any principal who has reason to believe that a student has been the victim of criminal conduct shall immediately report the incident in accordance with the Criminal Behavior Policy.

4. Report to State Superintendent of Public Instruction

Any administrator, including the superintendent, a deputy/associate/assistant superintendent, a personnel administrator, or a principal, who knows, has reason to believe, or has actual notice of a complaint that a licensed employee has engaged in misconduct resulting in dismissal, disciplinary action, or resignation shall report the misconduct to the State Board of Education within five days of dismissal, determination of disciplinary action, or acceptance of resignation. If the employee resigns within 30 days of a complaint for misconduct or during an ongoing investigation of a complaint, the misconduct is presumed to have resulted in the resignation. For purposes of this subsection, "misconduct" is any sexual offense or other criminal conduct that would justify automatic revocation of the employee's licensure pursuant to G.S. 115C-270.35(b) or the infliction of physical injury against a child other than by accident or in self-defense. Failure to report misconduct is a felony and may result in the suspension or revocation of an administrator's license by the State Board of Education.

This reporting requirement applies in addition to any duty to report suspected child abuse in accordance with state law and the Child Abuse and Related Threats to Child Safety policy, as applicable.

22. Public employees are not entitled to immunity from negligence claims and may be liable for negligent acts personally committed during the course of his or her professional duties. *See Isenhour v. Hutto*, 350 N.C. 601, 611 (1999); *see also Reid v. Roberts*, 112 N.C. App. 222,224,435 S.E.2d 116, 119 (1993).

23. Public officials may be liable for negligence if their actions were "corrupt or malicious, or that [they] acted outside of or beyond the scope of [their] duties." *Smith v. Hefner*, 235 N.C. 1, 7 (1952); *see also Grad v. Kaasa*, 312 N.C. 310,313, 312 S.E.2d 888, 890 (1984)("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.")

F<small>ACTUAL</small> A<small>LLEGATIONS</small>

24. C.K. is a student with a disability and has an Individualized Education Program ("IEP"). He qualifies for his IEP, specially designed instruction and related services under the Intellectual Disability Severe ("ISDE").

25. C.K. has been in self-contained classrooms for most of his academic career.[2]

26. According to C.K.'s education records, he was a "very happy, loving child, who enjoys attending school."[3]

27. In November 2022, T.K. received an anonymous letter, postmarked from the Research Triangle Region on November 5, 2022, which read as follows:

> Mr. Rencher is verbally and physically abusing children in his class. He makes racist comments and inappropriate sexual statements in front of the children. School administrators are aware of the situation. As of date, he has not been reprimanded or received a consequence for his actions. Mr. Rencher states he has been promoted to a better position in a more affluent part of the county.

28. On or about November 9, 2022, T.K. emailed Dr. Mark Savage, Eastern Area Superintendent for WCPSS. T.K. requested that Mr. Savage call him in reference to the anonymous letter that he received.

29. Upon information and belief, when T.K. followed up with Dr. Savage, he echoed Defendant Alston's assertion that the accusations against Defendant Rencher were false and made by a disgruntled colleague.

30. Upon information and belief, on or about May 2024, Defendant Rencher reported that Defendant Board never communicated with him about the allegations against him.

---

[2] A self-contained classroom is a learning environment where a single teacher, in some cases with the assistance of a secondary teacher and/or teacher's assistant(s), instructs a small group of students in multiple subjects throughout the day. Self-contained classrooms are often used for students with special needs and are supposed to provide a more focused and supportive environment that traditional general education classrooms.

[3] 2020_02_25_Online Instruction Service and Support Plan for Students with Disabilities

31. On or about June 10, 2024, Kendra D. Hill, WCPSS' Senior Director of Employee Relations

emailed T.K. as follows:

> Per your request, I am writing to follow up our phone call today. As we discussed, it was our understanding that some allegations regarding your son's former teacher were reported to law enforcement. However, due to uncertainty about which allegations were previously reported and out of an abundance of caution, Human Resources made the following additional report to law enforcement involving your son:
>
> - that on or around the first week of school or September 2022 (and repeatedly), the former teacher took his hand and palmed it on top of your son's head/held your son's head, forced your son/shoved your son's head to look downward at paper and focus on the paper; your son could not move his head left: or right;
> - that on or around the first week of school during the 2022-23 school year, the former teacher took both hands and put them around your son's ankles as he was coming down the stairs, and forced your son to step down one foot in front of the other, forcing him to come down the stairway more quickly and resulting in your son holding the railway for fear that he would fall; and
> - that on October 11, 2022, the former teacher pushed your son by the head violently in the direction of the bathroom.
>
> There were no allegations of any injury to your son. As we discussed, the employee no longer works for WCPSS.
>
> Thank you for speaking with me today. I wish the best for your son.

32. On or about June 24, 2024, the undersigned sent a records request and evidence preservation

letter to WCPSS by and through their counsel.

33. On or about June 28, 2024, Defendant Rencher was arrested and charges with assaulting

students with disabilities, including C.K.

CAUSES OF ACTION AND CLAIMS FOR RELIEF

COUNT 1: DISCRIMINATION BASED ON DISABILITY IN
VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
29 U.S.C. § 794, *et. seq.* (Defendant Board)

34. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

35. Plaintiff C.K. is a "handicapped person" as defined by the regulations of Section 504 of the Rehabilitation Act ("Section 504") and is otherwise qualified to attend school in Defendant Board's school district.  34 C.F.R. §104(3)(j)(1); 34 C.F.R. §103 (3)(1)(2).

36. Section 504 applied to each recipient of federal financial assistance from the Department of Education and to the program or activity that receives such assistance 34 C.F.R. § 104.2. Defendant Board is a "recipient of Federal financial assistance from the Department of Education" that operates a program or activity as defined by the regulations of Section 504. 34 C.F.R. §104.38; 34 C.F.R. §104.34.

37. Section 504 prohibits public entities, including local education agencies, from "exclude[ing] from the participation in, [ ] den[ying] the benefits of, or [ ] subject[ing] to discrimination" any otherwise qualified person with a disability from any program or activity receiving federal financial assistance soley by reason of his disability. 29 U.S.C. § 794(a).

38. From at least the Fall of 2022 through the Spring of 2024, Defendant Board discriminated against C.K. by excluding him from participation in a program, denying him the benefits of a program, and subjecting him to discrimination solely on the basis of his disability.

39. Defendant Board knew Mr. Rencher was engaging in physically, emotionally, and verbally abusive treatment of C.K. and that said abuse precluded him from accessing his education.

40. C.K. suffered the following abusive treatment, *inter alia*, during instructional time in response to manifestations of his disability:

    a.  Striking C.K. on or about the top of his head;

    b.  Restricting the movement of C.K.'s head such that he could not look up, left, or right;

    c.  Forcing students head downward and demanding he focus on the paper on his desk;

    d.  Grabbing the student by the ankles and forcing him to descend a staircase more swiftly than he was comfortable resulting in C.K. desperately grasping the railway to try to prevent himself from falling;

    e.  Violently pushing C.K., on his head, in the direction of the restroom; and

    f.  Verbally and emotionally abusing C.K.

41. Defendant Board's failure to address the abusive and discriminatory practices employed against C.K., that differed from the treatment of his nondisabled peers, demonstrates gross misjudgment and departs from all standards of professional judgment.

42. Defendant Board acted in bad faith when it failed to properly investigate or report Mr. Rencher's abusive treatment of C.K. due to his disability related behaviors although it is required by law and its own policy to do so.

43. Defendant Board acted in bad faith and with gross misjudgment when it allowed Mr. Rencher to continue teaching in the 2022-2023 and 2023-2024 school years despite the reports of his abusive treatment of the disabled children entrusted to his care.

44. Defendant Board acted in bad faith and with gross misjudgment when it moved Mr. Rencher into a self-contained classroom with severely disabled, non-verbal students in the 2022-2023

school year, and permitted him to remain in that classroom for the 2023-2024 school year despite multiple allegations and documentation supporting that Mr. Rencher engaged in a pattern of physically, verbally, and emotionally abusive treatment.

45. Defendant Board acted in bad faith and with gross misjudgment when it waited at least six hundred and two (602) days after learning of the allegations that Defendant Rencher abused disabled children at EWHS before contacting law enforcement.

46. Defendant Board is vicariously liable for the bad faith actions and gross misjudgment of its subordinates including:

   a. Failing to report, investigate, or take other corrective action after learning of Mr. Rencher's abusive treatment of C.K. and other disabled students; and

   b. Allowing Mr. Rencher to subject C.K. to recurring physically, verbally and emotionally abusive treatment due to his disability related behaviors.

47. Defendant Board knew Mr. Rencher's abusive treatment of C.K. denied him equal access to education as his similarly situated peers including:

   a. C.K. was punished and assaulted on and about the head, due to his disability related behaviors, which precluded him from accessing instruction;

   b. C.K.'s was forced down steps by his ankles and placed in imminent fear of significant bodily harm due to not moving fast enough for Mr. Rencher;

   c. C.K.'s behaviors in class increased due to Mr. Rencher's sanctioned abusive treatment thereby causing and contributing to a vicious cycle of disability related behaviors, and physical, emotional and verbal abuse by Mr. Rencher in response.

48. As a direct and proximate result of Defendant Board's discrimination based on C.K.'s disabilities, Plaintiffs sustained and continue to sustain damages in excess of One Hundred

Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial. Plaintiffs' damages include, but at not limited to:

   a. Past, present and future physical pain, psychological suffering and psychological impairment;

   b. Medical bills, counseling, and other costs and expenses for future psychological care;

   c. Compensatory damages; and

   d. Attorney's Fees.

COUNT II: DISCRIMINATION BASED ON DISABILITY
IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
42 U.S.C. § 12101, *et. seq.* (Defendant Board)

49. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

50. C.K. is a "qualified individual with a disability" as defined by the Americans with Disabilities Act, as amended ("ADA"). 42 U.S.C. § 12131(2).

51. Defendant Board is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(2).

52. Title II of the ADA and Section 504 are closely related, and there is no significant difference in the rights and obligations created by the two laws, or their analysis.

53. Title II of the ADA states "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

54. Defendant Board discriminated against C.K. by excluding him from participation in a program and denying him the benefits of the services, programs, and activities of a public entity, the WCPSS, was motivated by his disability, in violation of the ADA. 42 U.S.C. § 12132.

55. Defendant Board allowed the abusive treatments and punishments of C.K. that were motivated by his disability although his nondisabled peers did not experience the same punishments for similar behaviors. By way of example and not limitation, his non-disabled peers were not assaulted on and about the head, forced by their ankles down a flight of steps, or aggressively pushed toward the bathroom.

56. As a direct and proximate result of Defendants discrimination based on C.K.'s disability, Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial Plaintiffs' damages include, but are not limited to:

    a.  Past, present and future physical pain, psychological suffering and psychological impairment;

    b.  Medical bills, counseling, and other costs and expenses for future psychological care;

    c.  Compensatory damages; and

    d.  Attorney's Fees

COUNT III

NEGLIGENCE

(Superintendent Taylor, Assistant Superintendent Muttillo, Principal Alston, Defendant Hill, and Defendant Rencher in their individual capacities)

57. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

58. Negligence, at common law, contains three elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. *Fussell v. N.C. Farm Bureau Mut. Ins. Co.,* 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010).

59. Defendant Rencher breached his duty of ordinary care when he physically, verbally and mentally abused nonverbal disabled students entrusted to his care.

60. Defendants Taylor Muttillo, Alston and Hill breached their ordinary and reasonable duty of care to protect C.K. and other disabled students in their charge, despite knowing of Mr. Rencher's abusive treatment of his students.

61. Defendants Taylor Muttillo, Alston and Hill were negligent in supervising Mr. Rencher and ensuring he had appropriate training to work with students with disabilities.

62. These Defendants also breached their duty to report Mr. Rencher assault against C.K. and physically, emotionally, and verbally abusive treatment of C.K. to law enforcement and the State Board of Education under North Carolina General Statutes Section 115C-288(g), the North Carolina Administrative Code, and Defendant Board's Policy 4040.

   a. Defendants have a mandatory duty to report assault and physical abuse and teachers who engage in such behavior against their students;

   b. Defendants knew of Defendant Rencher's abusive treatment of C.K. and other disabled students;

   c. Defendants knew of the physical, psychological, and emotional harm the abusive treatment would cause C.K., and other disabled students subjected to such treatment;

   d. Any school employee of reasonable intelligence would know to investigate and report Defendant Rencher's abusive actions to law enforcement and the State Board of Education;

   e. None of the Defendants made such a report until June 2024; and

   f. Defendants acted maliciously and corruptly by choosing not to C.K. and report Defendant Rencher to law enforcement and the State Board of Education, something any reasonable school official would know to do.

63. By turning a blind eye to Defendant Rencher's abusive treatment of C.K. and other disabled students, and, in fact, encouraging C.K.'s parents to ignore the anonymous report, the other individual Defendants endorsed Defendant Rencher's behavior and understood his intention to continue to harm students.

64. As such, Defendants knew there would be continued harm to C.K. and other students and themselves intended this harm to befall students with disabilities.

65. As a result of these individual Defendants' negligence, Plaintiffs suffered injuries, including, but not limited to:

   a. C.K. experienced continued emotionally, verbally, and physically abusive treatment by Defendant Rencher while at school;

   b. C.K. suffered emotional damage as a result of the abusive treatment; and

   c. C.K. lost access to his education as a result of the abusive treatment.

66. Defendant Rencher breached his duty of ordinary care to protect students, including C.K., from injury and damage, causing injuries to C.K. Due to Defendant Rencher's abusive actions, C.K. lost instructional time constituting educational harm and suffered emotionally harm and other ongoing medical issues.

67. Defendants' actions and omissions were the proximate cause of C.K.'s injuries, including lost educational opportunity, emotional harm, physical harm, and psychological damage.

68. Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial Plaintiffs' damages include, but are not limited to:

   a. Past, present and future physical pain, psychological suffering and psychological impairment;

b.  Medical bills, counseling, and other costs and expenses for future psychological care;

c.  Compensatory damages; and

d.  Attorney's Fees.

<u>COUNT IV</u>
<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>
(Defendants Taylor, Mutillo, Hill, Rencher, in their individual capacities)

69. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

70. A defendant is liable for negligent infliction of emotional distress when "(1)the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006) (*quoting R. Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

71. Defendant Rencher negligently engaged in conduct that was reasonably foreseeable to cause C.K. severe emotional distress and did, in fact, cause C.K. severe emotional distress, when she engaged in physically, verbally, and emotionally abusive treatment of C.K. as described.

72. Defendants negligently engaged in conduct and failed to follow a duty of conduct imposed by law (i.e., the duty of ordinary care) to protect Plaintiff C.K. from injury and damage, when they knew of Defendant Rencher abusive treatment of C.K. and other students, failed to intercede, failed to investigate, and took no remedial steps to prevent it from reoccurring.

73. Again, by turning a blind eye to Defendant Rencher's abusive treatment of C.K. and other disabled students, Defendants endorsed his behavior and understood her intention to continue

to harm students. As such, Defendants knew there would be continued harm to C.K. other students and themselves intended this harm to befall students with disabilities.

74. C.K. suffered severe emotional distress as a result of Defendants' failures including, but not limited to:

    a. C.K.'s aversion to attending school;

    b. C.K.'s increased maladaptive behaviors; and

    c. C.L. being more easily agitated and crying more frequently.

75. Defendants' negligence was a proximate cause of C.K.'s severe emotional distress, which Defendants should have foreseen as the natural and continuous sequence of their negligent actions.

76. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial Plaintiffs' damages include, but are not limited to:

    a. Past, present and future physical pain, psychological suffering and psychological impairment;

    b. Medical bills, counseling, and other costs and expenses for future psychological care;

    c. Compensatory damages; and

    d. Attorney's Fees.

<u>CONCLUSION</u>

NOW THEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Wake County Board of Education and the Individual Defendants Taylor, Muttillo, Alston, Hill, and Rencher.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.


Respectfully submitted, this the 19th day of November, 2024.


/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 W. Millbrook Road, Ste. 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com
*Attorneys for Plaintiff*